# In re SHANNON, COURTNEY, and KAULDER M.

## No. 98–380–Appeal.

Supreme Court of Rhode Island.

April 20, 2000.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Providence.

Paula Rosin, Providence.

## ORDER

The respondent mother, Laurie M. (mother), appeals from a Family Court decree terminating her paternal rights to her three children: Shannon (born on December 14, 1985), Courtney (born on December 17, 1989), and Kaulder (born on November 18, 1991). After a prebriefing conference, we ordered both parties to show cause why we should not resolve this appeal summarily. Based upon our review of the parties' written submissions and oral arguments, we conclude that no cause has been shown and that the mother's appeal can be resolved at this time.

Because of the mother's alcohol dependency, the Department for Children, Youth and Families (DCYF) removed Shannon from her mother on ten different occasions since her birth and placed her in thirteen different foster placements; it removed Courtney on five occasions since 1990 and placed her in thirteen different foster placements; it removed Kaulder on three different occasions and placed him in seven different foster placements. The trial justice determined that because of their alcoholism, neither the mother nor the father was able to care for their children—despite DCYF's numerous efforts to provide support services for this family.

On appeal, the mother argues that the Family Court trial justice erred by finding that it would be in the best interest of the children to terminate her parental rights despite testimony from a clinical psychologist who opined that all of the children have a close relationship with their mother and are "very psychologically bonded" to her. On the other hand, the psychologist admitted that Shannon suffered from an emotional condition known as post-traumatic-stress disorder because of the frequent removals from her home, and that Courtney and Kaulder were having difficulty adjusting to their new environment, as exhibited by their bedwetting and nightmares. Despite the mother's alcohol abuse, the psychologist believed the children should have been reunified with their mother and that it would have been in their best interests to do so—as soon as she had "successfully been able to pull herself together"—provided she had been able to remain sober for at least one year.

The mother argues that it was wrong for the trial justice to ignore this evidence when no expert testimony refuted the psychologist's opinions that the children were psychologically bonded to the mother and that Shannon's problems stemmed from her anxiety about being taken away from the mother. Finally, the mother suggests that courts in other states have refused to terminate parental rights when the facts indicate that the children have strong bonds with their parents, the children are older, the children wish to maintain contact with their parents, and there is a question about whether they are likely to be adopted.

In Rhode Island, however, when reviewing cases involving the termination of parental rights, this Court has the limited role of examining the record to determine whether legally competent evidence exists to support the trial justice's findings. *See*

*In re Daniel R.*, 727 A.2d 188, 190 (R.I. 1999) (per curiam); *In re Cody*, 706 A.2d 1336 (R.I.1998) (mem.). The findings of the trial justice sitting without a jury are entitled to great weight and will not be disturbed by this Court unless they are clearly wrong or unless the trial justice overlooked or misconceived material evidence. *In re Daniel R.*, 727 A.2d at 190. Once it is determined that a parent is unfit, the best interest of the children becomes the Family Court's paramount consideration. *See In re Kristina L.*, 520 A.2d 574, 580 (R.I.1987).

Here, ample evidence supports the trial justice's decision. It was uncontradicted that the children had been removed from the mother many times over the course of their young lives and that all of them were living in pre-adoptive homes at the time of the trial. Moreover, the evidence of the numerous ways that DCYF attempted to assist the mother in overcoming her addiction to alcohol was also uncontradicted. Indeed, the mother does not suggest that DCYF has failed in any way to support the family in their attempts to reunite.

Even though a psychologist testified that he believed the parents' rights should not be terminated, it was the duty of the trial justice to consider this evidence and give it whatever weight it deserved. When questioned by the court; the psychologist admitted that DCYF''s actions in this case were appropriate, that the mother's compulsive tippling caused DCYF to intervene, and that the frequent removals of the children from their home caused them to suffer their current emotional problems. He also admitted that the mother's dipsomania had injured the children and that they should not be returned to her until "the mom shows that she has successfully been able to pull herself together and conquered her addiction and be able to care for her kids." Based upon this testimony, and notwithstanding the psychologist's recommendation for the court to defer any termination of parental rights, we are unable to conclude that the trial justice was clearly wrong in finding that it was in the best interests of the children to terminate the mother's parental rights so that the children would have the opportunity to experience greater permanence, stability, and safety in their home environment than the mother was able to provide to them.

Hence, we deny the respondent-mother's appeal and affirm the Family Court's judgment.